**Bell Law Group, PLLC**
116 Jackson Avenue
Syosset, New York 11791
T (516) 280-3008
F (516) 706-4692
BellLG.com

June 23, 2025

*Via ECF*
The Honorable Arlene R. Lindsay
United States Distict Court
Long Island Federal Courthouse
814 Federal Plaza
Central Islip, New York 11722

**Re: Shimunov, et al v. Kay, et al; Docket No.: 2:24-cv-05073**

Dear Judge Lindsay:

Our office represents named Plaintiffs Gavriel Shimunov and Maxwell Davydov, as well as opt-ins Randy Nina, Jaime Ludizaca, and Jonathan Khaimov (collectively, "Plaintiffs"), on behalf of themselves and all similarly situated, against their former employer, Adam Kay, *an individual*, BBQ CNG Inc. d/b/a Graze Brands, LLC and Crust on J, Inc. (collectively, "Defendants").

With the consent of defense counsel, Plaintiffs now respectfully seek court approval of the parties' settlement agreement, which provides for a total payment of $275,000.00 to Plaintiffs (inclusive of attorneys' fees), in accordance with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). The parties' finalized settlement agreement is submitted herein as Exhibit A.

## I. Procedural History

On July 22, 2024, Plaintiffs brought this action against Defendants for their multiple pay practice violations, including, inter alia: i) failure to pay minimum and overtime wages in violation of the Federal Labor Standard Act ("FSLA") and the New York Labor Law ("NYLL"); ii) misappropriation or unlawfully withholding gratuities under NYLL§ 196-d ; iii) failure to provide Plaintiffs with accurate wage statements in violation of the New York Wage Theft Protection Act ("NYWTPA"); iv) spread of hours; and v) retaliation under NYLL §215 among other violations.

On October 14, 2024, Defendants filed an Answer, denying all material allegations.

Thereafter, in compliance with the Court's FLSA Initial Discovery and Mediation Referral Order, the parties exchanged early discovery. In or about December 2024, Plaintiffs produced signed interrogatories and damages charts on behalf of Plaintiffs Gavriel Shimunov, Maxwell Davydov, and opt-in Jaime Ludizaca. Subsequently, Defendants produced additional discovery for the remaining two opt-ins.

The parties engaged in a full day mediation with Dina Jansenson of JAMS on April 21, 2025. After engaging in arms-length negotiations, the parties reached an agreement in principle, with the assistance of the mediator.

## II. The Parties' Claims & Defenses

*Plaintiffs' claims:*

Graze Brands owns and operates multiple Kosher restaurants in the five boroughs of New York and Five Towns. Plaintiffs were employed as servers at the Upper Crust, located at 6711 Main Street, Flushing NY, in Queens County. The servers were all paid below minimum wage, as Defendants were relying on the tip credit. However, since Defendants did not abide by the threshold requirements of the tip credit – specifically, notice, record keeping, and tips being reserved for tip eligible employees only – Defendants cannot rely on the tip credit.

Additionally, Defendants engaged in systemic, unlawful tip policies which they implemented in all their locations. Specifically, Defendants charge a mandatory "tip/gratuity" of 18% for all dine-in checks, irrespective of size, which consumers believed were in facts "tip/gratuities." Defendants then deduct 5.5% of the dine-in gross sales, including the mandatory 18%, which should have been given to tipped employees exclusively. Plaintiffs never agreed voluntarily to the 5.5% deduction and Defendants have never shown Plaintiffs, or produced a record herein, which show the distribution of the deducted 5.5%.

While Defendants have asserted that the 5.5% deduction was distributed to bussers (allegedly on a tip-share, tip pool basis), this theory fails on both the facts and the law. First, there are no compliant records of the tip-pool/ tip-share distribution, which is fatal to Defendants' claim that it had a valid tip-pool/tip-share. Second, there is a more fundamental error with Defendants' theory: since bussers did not work every night, and the number of bussers varied per night, the consistent deduction of 5.5% is suspect. Moreover, proportionally, 5.5% of gross dine-in sales being allocated to 1-2 bussers represents a huge windfall to the bussers. In sum, Defendants' tip policy cannot stand and falls like a row of dominos:

- Since Defendants' have no compliant records of the allocation of the 5.5%, this deduction cannot be deemed a valid tip-pool/tip-share.
- Absent a valid tip-pool/tip-share, Defendants' deduction of 5.5% is an express violation of NYLL§ 196-d which prohibits sharing gratuities with non-tip eligible employees and the house.
- Since Defendants' tip policy is invalid, and violates NYLL §196-d, Defendants' reliance on the tip credit fails (and for other reasons as well, such as notice and record keeping).
- Absent adherence to the tip credit requirements, Defendants are liable for minimum wage violations under the NYLL, with liquidated damages, as they paid their servers below minimum wage, in expected reliance on the tip credit.
- Since Defendants have no compliant records of the allocations of the 5.5% which they claim is a tip pool/tip-share, and additionally Defendants cannot reply on the tip credit to supplement the sub-minimum wages, Defendants' wage statements and wage notices under NYLL § 195(1) and § 195(3) are necessarily inaccurate.

Separately, Defendants are liable to Plaintiffs for failure to pay overtime wages at the mandatory, statutory rate as to three Plaintiffs, and for spread of hours pay as to all Plaintiffs. Plaintiffs' individual damages charts are annexed hereto as Exhibit B.

*Defendants' Position:* Defendants maintained that their tip pool/share policy was lawful because the 5.5% servers were required to "tip out" was only distributed to other tip eligible employees such as bussers. Further, 5.5% "tip out" never resulted in the server's weekly wages falling below the applicable minimum wages. Since the 5.5% tip pool/share policy was lawful, Defendants claim that their reliance on the tip credit was appropriate. Defendants also argued that Plaintiffs lacked standing to assert causes of action under the NYWTPA. Finally, Defendants argued that to the extent Plaintiffs can prove liability, any monetary damages are *de minimus*.

## III. Settlement Terms

The $275,000.00 settlement ("Settlement Sum") will be distributed as follows:

| **Paintiffs** | **Settlement Sum (minus costs)** |
|---|---:|
| GAVRIEL SHIMUNOV | $50,045 |
| MAXWELL DAVYDOV | $33,959 |
| RANDY NINA | $39,321 |
| JAIME LUDIZACA | $30,385 |
| JONATHAN KHAIMOV | $25,023 |
| | |
| *Bell Law Group - Attorney's Fees (1/3 Settlement Sum)*[1] | *$89,367* |
| *Bell Law Group - Litigation Costs* | *$6,900* |
| **Total** | $275,000 |

## IV. The Settlement is Fair and Reasonable under the Cheeks Factors

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Kochilas v. Nat'l Merch. Servs., Inc., 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id. (citation omitted).

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Wolinsky factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in

[1] A summary of counsel's contemporaneous billing and litigation costs is annexed hereto as Exhibit C.

establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. Here, all of the factors support approving the parties' settlement. Id.

*First,* the total settlement amount of $275,000.00 is reasonable considering Plaintiffs' potential range of recovery at trial in light of the two (2) highly disputed issues in the case: i) whether Defendants reduction of 5.5% of each Plaintiff's tips was a lawful tip-pool/tip-share, which was limited to tip-eligible employees; and ii) whether Defendants' failure to keep accurate records of the alleged tip-pool/tip-share would result in an invalidation of the tip credit.

If Plaintiffs were successful in proving that the tip-pool/tip-share was unlawful and that Defendants could not rely on the tip credit, then Plaintiffs would be entitled to approximately $750,000 in wages owed under the FLSA and NYLL, inclusive of liquidated damages, and exclusive of attorney's fees. (See Exhibit B, Damages Charts). However, if Defendants were successful in asserting that their tip-pool/tip-share was lawful, and that the tip credit was valid, then Plaintiffs' recovery would be considerably less. Indeed, Defendants continue to assert that Plaintiffs are entitled to little or no recovery whatsoever. Thus, a realistic range of recovery for Plaintiffs' FLSA claims was between zero and $750,000.

Under this proposed settlement, after deducting for attorneys' fees and costs, Plaintiffs will receive $178,733 collectively, which is ~23.8% of their maximum recovery of $750,000. (See Exhibit B, Damages Charts). The outcome here is reasonable under the FLSA, particularly in light of the legal and evidentiary challenges that would face the Plaintiffs in the absence of a settlement. See, e.g., Davidson v. Cty. of Nassau, No. 2:18-CV-1182-JMW, 2023 U.S. Dist. LEXIS 141561, at *28 (E.D.N.Y. Aug. 14, 2023)("Here, counsel's proposed request for attorney's fees totaling one-third of the Settlement Agreement is well within the range of reasonableness.") (Lindsay, J.). See also Zorn-Hill v. A2B Taxi LLC, Nos. 19-cv-1058, 18-cv-11165 (KMK), 2020 U.S. Dist. LEXIS 170608, 2020 WL 5578357, at *4-5 (S.D.N.Y. Sept. 17, 2020) (approving settlement amount equal to 12.5 percent of the plaintiffs' best-case scenario recovery in case involving "major factual and legal litigation risks"); Gervacio v. ARJ Laundry Servs. Inc., No. 17-cv-9632 (AJN), 2019 U.S. Dist. LEXIS 12760, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (approving settlement that would net the plaintiff approximately 13 percent of the maximum possible recovery amount (i.e., $4,000 to the plaintiff out of a possible $29,820.41) where facts were disputed); Aly v. Dr. Pepper Snapple Grp., Inc., No. 18 CV 4230 (FB)(LB), 2019 U.S. Dist. LEXIS 100256, at *6 (E.D.N.Y. June 13, 2019) (net settlement of 20% of FLSA plaintiff's maximum recovery is reasonable).

*Second*, this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation. Through settlement, Plaintiffs will avoid the stress of contentious litigation and the loss of income associated with taking days off from work in order to attend depositions and trial. Plaintiffs will also avoid the stress, uncertainty, and delay that would be inherent in completing discovery and engaging in motion practice.

*Third*, from Plaintiffs' perspective, the prompt payment of the settlement amount is far preferable to continued litigation. As noted above, there are significant legal and factual disputes in the case, particularly around the credibility of each party's position, the legitimacy of Defendants' tip pool, and

the legitimacy of the records maintained. In contrast, through settlement, both parties have control over their recovery and financial exposure and avoid accruing additional attorneys' fees for an uncertain result. Plaintiffs are interested in a settlement that eliminates the uncertainty of trial, expedites his receipt of funds, and provides closure.

As to the fourth and fifth Cheeks factors, the settlement is clearly the result of arm's length negotiation by zealous advocates. Significantly, the parties were assisted in reaching the settlement by way of mediation with Dina Jansenson of JAMS on April 21, 2025. The assistance of an experienced neutral reinforces that a settlement agreement is non-collusive. See, e.g., Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process."). Thus, there was no fraud or collusion here.

## V. The Non-Monetary Terms are Reasonable

The parties' settlement does not include the types of provisions discussed in Cheeks that contravene FLSA's remedial purposes. Snead v. Interim Healthcare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018). The release is narrowly tailored to the claims in this litigation. (See Exhibit A, Settlement Agreement ¶ 2). Further, the parties' non-disparagement clause is also mutual and makes clear that truthful statements about the nature of the case, the settlement of the case, and the parties' experiences in litigating their claims and defenses, do not constitute disparagement. (Id. at ¶ 10). These provisions reflect compromises made among the parties and are within the guardrails of fairness set out in Cheeks.

## VI. Plaintiff's Attorneys' Fees are Reasonable

An award of attorneys' fees is also subject to review under Cheeks and must be reasonable. Rainboth-Venditti v. Nat'l Retail Sols, Inc., No. 6:16-CV-137 (ATB), 2018 U.S. Dist. LEXIS 19130, at *2 (N.D.N.Y. Feb. 6, 2018). The Second Circuit courts refer to the Goldberger factors when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel;(2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000). Here, all of the Goldberger factors demonstrate that Plaintiffs' attorneys' fees are reasonable.[2]

*Goldberger Factors 1-3:* The legal and factual issues in this case were complex as they concerned the time and payroll records of five plaintiffs spanning six years. Indeed, to gain a command of the issues of the case, counsel for both parties spent considerable time speaking to their clients about the facts of the case and reviewing the time records and payroll records. Moreover, issues about tip allocation and computation are particularly complex.

*Goldberger Factor 4:* The parties were represented by experienced attorneys who are well versed in employment litigation. The undersigned has been practicing law since 2013, and her practice has

[2] While Defendants do not join in Plaintiffs' motion for approval of attorneys' fees and costs, Defendants take no position relating to same.

predominantly focused on labor and employment law, including class and collective actions. Jennifer Calamia, a senior associate who was heavily involved in this matter, has been practicing law since 2018. (See Exhibit D). Her practice has predominantly focused on labor and employment law.[3] Alec Kirschenbaum, a junior associate, was admitted to the bar in January 2025. (Id.)

*Goldberger Factors 5-6:* Under the settlement agreement, Plaintiffs' counsel would receive a fee award of $89,367, representing 33% of the gross Settlement Sum plus litigation costs in the sum of $6,900.00. (See Exhibit C). This amount is consistent with approved fee awards in this Circuit, thereby demonstrating its reasonableness. Indeed, the thirty-three percent contingency fee arrangement is typically deemed reasonable in a FLSA case. See Kornell v. Haverhill Ret. Sys., 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum – not one-third the net settlement sum after deduction of attorneys' fees – and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); Petersonv. Lab. Corp. of Am. Holdings, No. 1:20-cv-1056 (MAD/TWD), 2021 U.S. Dist. LEXIS 241010, at *8 (N.D.N.Y. Dec. 17, 2021) (holding 33 1/3% in attorney's fees are reasonable on Cheeks review); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); Thornhill v. CVS Pharmacy, Inc., 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

The reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." See Fresno County Employees' Retirement Assoc., 925 F.3d at 72 (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007). Here, attorney and paralegal hours worked are summarized below:

| Position/Name | Sum of Hours | Sum of Amount |
|---|---|---|
| **Admin/Paralegal** | **28.5** | **$ 3,562.50** |
| Christine Civale | 26.7 | $ 3,337.50 |
| Jayne Calderon | 1.6 | $ 200.00 |
| Sherley Galdamez | 0.2 | $ 25.00 |
| **Jr. Associate** | **38.3** | **$ 13,405.00** |
| Alec Kirschenbaum | 38.3 | $ 13,405.00 |
| **Partner** | **69.8** | **$ 31,410.00** |
| Chaya Gourarie | 69.8 | $ 31,410.00 |
| **Sr. Associate** | **63.6** | **$ 25,440.00** |
| Jennifer Calamia | 63.6 | $ 25,440.00 |
| **Grand Total** | **200.2** | **$ 73,817.50** |

Specifically, over the course of the litigation, three attorneys primarily worked on the case. Alec Kirschenbaum, a junior associate, billed for approximately 38.3 hours, at the rate of $350.00 an hour. Jennifer Calamia, a senior associate, billed for approximately 63.6 hours, at the rate of $400.00 in total.

[3] Jennifer Calamia left Bell Law Group in or about February 2025, and attorney Alec Kirschenbaum assisted with the litigation thereafter.

Chaya Gourarie, a partner, billed for approximately 69.8 hours at the rate of $450.00 per hour. See Exhibit C.

These hourly rates are deemed reasonable in this District. See, e.g., Campos, et al. v. BKUK 3 Corp., No. 18 Civ. 4036, 2021 U.S. Dist. LEXIS 151528, 2021 WL 3540243, at *11 (S.D.N.Y. Aug. 10, 2021) ("Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (collecting cases); See also Leon v. Gazivoda Realty Co., 2019 U.S. Dist. LEXIS 160059, at *6 (S.D.N.Y. Sep. 16, 2019) (approving the rate of $400.00 per hour for the undersigned [Chaya Gourarie] when she was a senior litigation associate in 2019). On May 22, 2023, the court (Judge Koeltl) approved a settlement wherein the undersigned's hourly rate was $500.00, holding that, "[t]he Court finds the terms of the settlement including the attorney's fees and costs listed in this letter to be fair, reasonable, and adequate." See Alcantara Lopez et al v. TMS Management et al., No. 22-cv-10714-JGK (Docket No. 35).

Additionally, several paralegals and administrative staff worked on this case, and billed for approximately 28.5 hours in total, at the rate of $125.00 per hour, which courts have deemed to be reasonable. See, e.g., Long v. HSBC USA Inc., 14 Civ. 6233, 2016 U.S. Dist. LEXIS 124199, 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) ("As to the fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable.").

In sum, based on the above time and hourly rates, Plaintiffs' counsel's lodestar is $73,817.50, which is a multiplier of ~1.2x. (Exhibit C). Accordingly, Bell Law Group's attorneys' fees of $89,367 are within the range of attorneys' fees that courts in this Circuit have deemed reasonable. See, e.g., Johnson v. Brennan, No. 10 Civ 4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); Tosic v. Pinnacle Grp. N.Y. LLC, 2021 U.S. Dist. LEXIS 152137, at *5 (S.D.N.Y. Aug. 12, 2021) (awarding a lodestar multiplier of 3.30).

The costs are also reasonable. The sum of $6,900 represents costs for filing, service, travel fees, and mediation fees. (See Ex. C, Billing Summary; Exhibit E, Mediation Fees).

For the reasons stated above, Plaintiffs respectfully request that the Court approve the settlement agreement in this case. We thank the Court for its attention to this matter.

Respectfully Submitted,

BELL LAW GROUP, PLLC

*Chaya M. Gourarie, Esq.*
Chaya M. Gourarie, Esq.